## Richmond

### CLINCHFIELD COAL COMPANY

### V.

### HOMER ANDERSON

June 12, 1981.

Record No. 800987.

Present: All the Justices.

*Michael F. Blair (Elizabeth S. Woodruff; Penn, Stuart, Eskridge & Jones,* on briefs), for appellant.
*Gerald F. Sharp* for appellee.

CARRICO, C. J., delivered the opinion of the Court.

This appeal involves a claim for a cost-of-living supplement under § 65.1-99.1[1] of the Virginia Workmen's Compensation Act.

---

[1] § **65.1-99.1. Cost of living supplements for total incapacity and dependents of deceased.**—In the event that the combined disability benefit entitlement of a claimant or his dependents under the Virginia Workmen's Compensation Act and the Federal Old-Age Survivors and Disability Insurance Act is less than eighty per centum of the average monthly earnings of the claimant before disability or death, cost of living supplements shall be payable, in addition to the other benefits payable under this Act, in accordance with the provisions of this section to those recipients of awards resulting from occupational disease, accident or death occurring on or after July one, nineteen hundred seventy-five under §§ 65.1-54, 65.1-56(18), 65.1-56.1(4), 65.1-65 and 65.1-65.1.

The amounts of supplementary payments provided for herein shall be determined as a per centum of the benefit allowances supplemented hereby. Said per centum shall be determined by reference to the increase, if any, in the United States Average Consumer Price Index for all items, as published by the Bureau of Labor Statistics of the United States Department of Labor, from its monthly average, from one calendar year to another.

Amounts of supplementary payments shall be determined initially as of July one, nineteen hundred seventy-six, based on the per centum increase, if any, of the Average

This section provides that such a supplement shall be payable to certain recipients of compensation awards, "in addition to the other benefits" payable under the Act, if the employee's combined workmen's compensation and social security entitlement is less than 80% of his average monthly earnings before disability.

The claimant, Homer Anderson, an employee of Clinchfield Coal Company, was injured permanently in an industrial accident on July 18, 1978. Pursuant to agreement, he was awarded compensation benefits for total incapacity in the amount of $187 per week.

Responsive to the mandate of § 65.1-99.1, the Industrial Commission fixed 9% as the rate of cost-of-living supplements effective October 1, 1979. In December, 1979, Anderson applied for a cost-of-living supplement. He established his qualifications for an increase under § 65.1-99.1, and the Commission allowed him the 9% supplement. Clinchfield has appealed.

Clinchfield contends the award of the full 9% increase is erroneous. Under Code § 65.1-54,[2] Clinchfield points out, income bene-

---

Consumer Price Index for all items from the calendar year nineteen hundred seventy-four to the calendar year nineteen hundred seventy-five and successively annually thereafter. Any change in the cost of living supplement determined as of any determination date shall become effective as of October first next following such determination date and as the case may be, shall be added to or subtracted from any cost of living supplements previously payable.

[2] **§ 65.1-54. Compensation for total incapacity; computation of average wage.**—When the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such total incapacity, a weekly compensation equal to sixty-six and two-thirds per centum of his average weekly wages, with a minimum not less than twenty-five per centum and a maximum of not more than one hundred per centum of the average weekly wage of the Commonwealth as defined herein. In any event, income benefits shall not exceed the average weekly wage of the injured employee. Any farm employer who continues to furnish benefits while the employee is incapacitated, shall be given credit for the value of such benefits so furnished when computing the compensation due the employee.

For the purpose of this section the average wage in the Commonwealth shall be determined by the Industrial Commission as follows: On or before January one of each year, the total wages reported on contribution reports to the Virginia Employment Commission for the twelve-month period ending the preceding June thirtieth shall be divided by the average monthly number of insured workers (determined by dividing the total insured workers reported for that twelve-month period by twelve). The average annual wage thus obtained shall be divided by fifty-two and the average weekly wage thus determined rounded to the nearest dollar. The average weekly wage as so determined shall be applicable for the full period during which income benefits are payable, when the date of occurrence of injury or of disablement in the case of disease falls within the year commencing with the July one, following the date of determination.

fits for total incapacity "shall not exceed" the amount of "the average weekly wage of the Commonwealth." The $187 per week originally awarded Anderson, Clinchfield notes, equaled the then current average weekly wage of the Commonwealth; since that time, the average weekly wage of the Commonwealth has increased, resulting in higher benefit awards to later-injured employees.

"[T]he cost of living supplement was intended," Clinchfield argues, "to bring claimants previously injured closer to the status of presently injured employees, if possible, but not to provide for greater benefits." The Commission's action, Clinchfield asserts, thwarts the legislative intent, as demonstrated by the following analysis: Because he was injured July 18, 1978, Anderson was entitled to a cost-of-living increase on October 1, 1979. An increase of 9%, when added to benefits he already was receiving, would provide Anderson a total award exceeding the amount allowed an employee injured after October 1, 1979. This later-injured employee would receive weekly benefits of only $199, the average weekly wage of the Commonwealth applicable to accidents occurring between July 1, 1979, and July 1, 1980.

We can correct this unintended imbalance, Clinchfield asserts, by application of the general rule of construction that, if reasonably possible, a statute should be interpreted to give it effect as a whole. By applying this rule, Clinchfield opines, we can give effect to both the "in addition to" language of § 65.1-99.1 and the "shall not exceed" wording of § 65.1-54. Accordingly, Clinchfield concludes, we should construe the Act to allow benefits up to, but not in excess of, the maximum rate, with the result that Anderson's award should be reduced to $199 per week.

██ We do not agree with Clinchfield's construction of the Code sections in question. Reviewing the sections, we find that, in a given year, the availability of cost-of-living supplements is based

The minimum or the maximum weekly income benefits shall not be changed for any year unless the computation herein provided results in an increase or decrease of two dollars or more, raised to the next even dollar in the level of the minimum or the maximum weekly income benefits.

In no case shall the period covered by such compensation be greater than five hundred weeks, nor shall the total amount of all compensation exceed the result obtained by multiplying the average weekly wage of the Commonwealth as defined herein for the applicable year by five hundred, except that weekly compensation on account of total and permanent incapacity as defined by § 65.1-56(18) shall continue for the lifetime of the injured employee without limit as to total amount.

upon a determination whether there has been an increase in the Consumer Price Index, rather than a change in the average weekly wage of the Commonwealth. Further, once the supplement becomes available, eligibility therefor is tied to a formula in which the average wage of the claimant, rather than the average wage of the Commonwealth, is the determinative factor. And, although a supplement has been allowed, it later may be reduced if the Consumer Price Index falls, even though the average weekly wage of the Commonwealth may rise, in the determinative period.

More important, § 65.1-99.1 clearly states that cost-of-living supplements shall be "in addition to the other benefits" payable under the Workmen's Compensation Act. One of the other benefits payable under the Act is provided by § 65.1-54 in the form of compensation for total incapacity up to the amount of the average weekly wage of the Commonwealth. Adoption of Clinchfield's argument that the amount of cost-of-living supplements is limited by the average weekly wage of the Commonwealth would require either writing out of § 65.1-99.1 the "in addition to" language or writing into the section a provision making this language subject to the "shall not exceed" wording of § 65.1-54. We decline to pursue either course.

 The General Assembly, Clinchfield says, has now written into § 65.1-99.1 just such a limiting provision and thereby has "perhaps best illuminated" its original intention "not to provide greater benefit to formerly injured employees than to those injured at the present." In this connection, Clinchfield refers to an amendment to § 65.1-99.1,[3] adopted at the 1981 session of the General Assembly and not yet effective, which provides that "compensation paid the claimant under this section shall at no time exceed the then current maximum weekly amount payable under § 65.1-54."

We disagree with Clinchfield concerning the value of the 1981 amendment as an indicator of prior legislative intent. If, as Clinchfield contends, the General Assembly originally intended to limit total compensation benefits to the amount of the average weekly wage of the Commonwealth, it would have employed the language later used in the 1981 amendment. This language was as readily available when § 65.1-99.1 was enacted in 1975 as it was in the early part of this year, when the amendment was adopted.

[3] Acts 1981, c. 265.

More likely, the 1981 amendment resulted, not from a desire to state an intention ex post facto, but from recognition of a phenomenon, cited here by Clinchfield: In the 1978-79 period, the cost of living, for the first time since § 65.1-99.1 was enacted, rose at a greater rate than the average weekly wage of the Commonwealth. This phenomenon, and not a misconstruction of the applicable statutory provisions by the Commission, caused Anderson's total compensation benefits, at least temporarily, to exceed those payable to an employee injured later than Anderson.

We believe the statutory provisions applicable to this case express the clear intention that a full cost-of-living supplement is payable even though its allowance causes a claimant's total compensation benefits to exceed the average weekly wage of the Commonwealth current at the time of allowance. Accordingly, our conclusion is to affirm the award of the Commission.

*Affirmed.*